**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VICKI MURPH-JACKSON, | ) | |
|     Petitioner | ) | No. 07 C 6005 |
| | ) | (No. 02-CR-635-4) |
| vs. | ) | |
| | ) | Hon. Charles P. Kocoras |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent | ) | |

## NOTICE OF FILING

To:    Stuart Fullerton
        Assistant United States Attorney
        219 S. Dearborn St., 5th Floor
        Chicago, Illinois 60604

     Please take notice that on this 1st day of November, 2007, the undersigned filed the following document(s) in the above-captioned cause, a copy of which is attached hereto.

–    **PETITIONER'S SUMMARY OF MEMORANDUM OF LAW IN SUPPORT OF § 2255 PETITION**

                                                FEDERAL DEFENDER PROGRAM
                                                Terence F. MacCarthy
                                                Executive Director


                                 By:    <u>s/Alison Siegler</u>
                                                    Alison Siegler

ALISON SIEGLER
FEDERAL DEFENDER PROGRAM
55 East Monroe St., Suite #2800
Chicago, IL   60603
(312) 621-8300

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICKI MURPH-JACKSON, | ) | |
|     Petitioner | ) | No. 07 C 6005 |
| | ) | (No. 02-CR-635-4) |
| vs. | ) | |
| | ) | Hon. Charles P. Kocoras |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent | ) | |

**PETITIONER'S SUMMARY OF MEMORANDUM OF LAW
IN SUPPORT OF § 2255 PETITION**

Petitioner VICKI MURPH-JACKSON, by the Federal Defender Program and its attorney ALISON SIEGLER, pursuant to the Court's order, respectfully presents a summary of her position in support of her request for relief under 28 U.S.C. § 2255.

**I.    Introduction**

Attorney William Laws provided ineffective assistance of counsel at trial, at sentencing, on appeal, and during a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). Ms. Murph-Jackson was convicted at trial and sentenced to 262 months (nearly 22 years) in prison. She has requested an evidentiary hearing on her petition.[1]

**II.    Ineffective Assistance at Sentencing** (Memo, pp. 4-18)

    **A.    Criminal History** (Memo, pp. 4-11)

Mr. Laws provided ineffective assistance of counsel at sentencing because he failed to

---

[1]The facts contained in the memorandum of law are identical to the facts contained in the § 2255 petition, and the exhibits attached to the memorandum of law are identical to the exhibits attached to the § 2255 petition. The memorandum of law will be cited throughout this summary as "Memo, p. ___."

1

object to an improper criminal history enhancement under the Guidelines. The Presentence Report (PSR) incorrectly found that Ms. Murph-Jackson was on probation at the time of the offense, and assigned two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d). This moved Ms. Murph-Jackson from a criminal history category I to a criminal history category II and increased her sentence.

Ms. Murph-Jackson had been sentenced to three years probation on May 24, 1995. Accordingly, she completed that probation on May 23, 1998. The PSR determined that she should receive two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d) for committing this offense while under a criminal justice sentence. This determination was presumably based on the generic statement in the PSR that the conspiracy began in 1996. However, there was no evidence presented either at trial or at sentencing that proved by a preponderance of the evidence that Ms. Murph-Jackson became involved in the instant offense on or before she completed probation on May 23, 1998.

Mr. Laws did not object to the PSR's erroneous determination that she was on probation during the offense. Although Laws stated that Ms. Murph-Jackson's involvement in the offense did not begin until December 1998, he did not raise the issue that the timing of Ms. Murph-Jackson's entry into the conspiracy had a material effect on her criminal history calculation, her criminal history category, and, consequently, her guideline range. As a result of Mr. Laws's deficient performance, Ms. Murph-Jackson was placed in a higher criminal history category and received a sentence that was 27 months higher than the low end of the correct guideline range.

**B.     Safety Valve** (Memo, pp. 11-12)

Mr. Laws also provided ineffective assistance of counsel at sentencing in violation of the

Sixth Amendment by failing to explore the availability of "safety valve" relief. This failure may have been driven in large part by the ineffectiveness outlined above. If Mr. Laws had properly objected to the Presentence Report's error in assigning Ms. Murph-Jackson three criminal history points, the Court would have found that Ms. Murph-Jackson had only a single criminal history point and therefore met U.S.S.G. § 5C1.2(a)(1). Laws also failed to arrange for Ms. Murph to provide a safety valve proffer to the government after her conviction.

If the Court had found that the safety valve applied in this case, Ms. Murph-Jackson's sentence would have been lower. Specifically, the safety valve would have decreased her offense level from 38 to 36, making her proper Guideline range 188-235 months. In addition, the safety valve would have meant that the ten year mandatory minimum did not apply to Ms. Murph-Jackson's case, and therefore it would have been possible for her to receive an even lower sentence.

### C. Sentencing Investigation and Downward Departure (Memo, pp. 13-18)

Mr. Laws also provided ineffective assistance of counsel at sentencing by failing to conduct any sentencing investigation, offer any mitigating evidence on Ms. Murph-Jackson's behalf, or argue that her family circumstances justified a downward departure from the Guideline range.

## III. Ineffective Assistance on Appeal (Memo, pp. 18-23)

Laws completely abdicated his duties and responsibilities as appellate counsel. He failed to properly appeal Ms. Murph-Jackson's sentence and did not order the sentencing transcript for the appeal. Laws did not make even the barest attempt to appeal the criminal history error, or

give any sign that he was aware of it. Accordingly, the Seventh Circuit's affirmance of Ms. Murph-Jackson's conviction was in no way an endorsement of Laws's performance in the district court.

**IV.     Ineffective Assistance on *Paladino* Remand** (Memo, pp. 23-33)

Despite Laws' complete failure to function as an attorney on appeal, the Seventh Circuit issued a limited remand pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). During the Seventh Circuit oral argument, Laws promised the court: "[I]f this case is remanded for a sentencing rehearing, certainly the transcript will be ordered at that time for Judge Kocoras to review his comments at the time of sentencing."

Laws never ordered the original sentencing transcript after the *Paladino* remand as he had promised the Seventh Circuit he would. Moreover, Laws entirely ceased to participate in Ms. Murph-Jackson's defense after the oral argument on her appeal. The district court directed the parties to file written submissions regarding the *Paladino* remand and set a briefing schedule. Laws did not file a memorandum with the district court or make any substantive oral request for a lower sentence based on *Booker* and 18 U.S.C. § 3553(a). Given that Laws did not file anything with the district court, it is not surprising that the court issued an order stating that it "would have imposed the same sentences as previously imposed against defendants Rodney McLee and Vicki Murph-Jackson had the guidelines been advisory and not mandatory." Nor did Laws offer anything to the Seventh Circuit after this Court made its *Paladino* finding. Laws's behavior was tantamount to the failure to file a brief on appeal, conduct which constitutes a per se Sixth Amendment violation.

If prejudice must be shown, it is here in abundance. After *Booker*, there were numerous

compelling § 3553(a) arguments available to Ms. Murph-Jackson based on the record. Given the history and characteristics of Ms. Murph-Jackson and the circumstances of the offense, a sentence of nearly 22 years in prison was "greater than necessary" to comply with the purposes of punishment in § 3553(a). Laws did not make any argument regarding how the § 3553(a) factors applied to the facts of Ms. Murph-Jackson's case.

Laws did not explain that various facts about Ms. Murph-Jackson demonstrated that it was not necessary to incarcerate her for 22 years to protect the public under 3553(a)(2)(C). Laws did not explain that Ms. Murph-Jackson had never served a day in prison in her entire life, a fact that the Seventh Circuit has held justifies a below guideline sentence. He also did not explain that according to the Sentencing Commission's own statistics, women have a far lower rate of recidivism than men. Laws also did not explain that according to Sentencing Commission statistics, someone like Ms. Murph-Jackson, who has a high school diploma, attended college, and received a teaching certificate, has a significantly lower risk of recidivism than someone who has not graduated from high school. And he failed to note that the Sentencing Commission has determined that people who have no history of using illegal drugs, like Ms. Murph-Jackson, have a lower risk of recidivism.

In addition, Laws failed to argue that Ms. Murph-Jackson had a strong network of supportive family members who were not involved in the offense, including her mother and siblings, and that this network reduced the chance that she would reoffend. Laws likewise did not discuss the fact that Ms. Murph-Jackson's exemplary behavior while on bond and the fact that she self-surrendered to custody also demonstrated that it was not necessary to incarcerate her for 22 years to protect the public.

5

Laws did not explain that Ms. Murph-Jackson's family circumstances, religious background, and contributions to the community were a part of her history and characteristics under § 3553(a)(1) which rendered a sentence of 22 years in prison greater than necessary. Ms. Murph-Jackson has six children between the ages of six and fifteen, two biological children and four adopted children, and is "a wonderful mother." The fact that Ms. Murph-Jackson opened her home and her heart to four children who were wards of the state demonstrates a level of selflessness and compassion that speaks volumes about her character under § 3553(a)(1). Laws did not explain to the Court that Ms. Murph-Jackson's 14-year-old daughter Terri, whom she had adopted at the age of three, was extremely emotionally troubled and had attempted suicide. He did not explain that 13-year-old Tatiana, whom Ms. Murph-Jackson had taken in at the age of two, had vivid memories of the sexual abuse she had suffered as a baby and had always needed extra love and attention as a result. Laws also did not talk about how the two and a half years that Ms. Murph-Jackson had been incarcerated since the sentencing had affected her children, although there was plenty he could have said on this topic had he only asked his client or her family. He did not talk about the fact that after Ms. Murph-Jackson was incarcerated, her family splintered: three children stayed with Ms. Murph-Jackson's mother, two children went to live with her ex-husband, and Terri became increasingly suicidal and violent, and eventually became a ward of the state. All of these were facts that the Court could have considered after *Booker* in determining whether a 22 year sentence was appropriate.

Laws also failed to discuss "the circumstances of the offense" under § 3553(a)(1) that weighed in favor of giving Ms. Murph-Jackson a lower sentence under advisory guidelines. Applying the Guidelines resulted in Ms. Murph-Jackson's receiving the same sentence for the

6

drug offense as her husband, McLee, even though she played a much smaller role in the offense than McLee.

In imposing the original sentence, the Court noted that it was constrained by the mandatory nature of the Guideliens.  If Laws had raised the above facts and made legal arguments about them to the Court after the remand, there is a reasonable probability that the Court would have told the Seventh Circuit that it would have imposed a lower sentence.

## V.     Ineffective Assistance at Trial (Memo, pp. 33-41)

Considering "the pattern of counsel's deficiencies" in the aggregate, Laws's performance at trial was outside the range of professionally competent representation and prejudiced Ms. Murph.  There is no evidence that Laws made any attempt to conduct any investigation or locate any exculpatory witnesses. If Laws had bothered to interview witnesses and investigate the case, he would have learned that Ms. Murph-Jackson's mother, Everlean Murph, could offer exculpatory testimony.  If Laws had called Everlean as a witness, there is a reasonable probability that Ms. Murph-Jackson would have been acquitted.

The most damaging evidence against Ms. Murph-Jackson was the fact that a box containing drugs and a gun was found in the attic of her house.  The government introduced evidence that when the agent opened the storage container in the attic, bags of children's clothes and a Tweety Bird doll were lying on top of the cocaine.  The government argued in closing that this was evidence "that Vicki Murph-Jackson knew exactly what was up there and that was where she was storing the cocaine."  The implication of the government's argument was that Ms. Murph-Jackson was not only aware of the cocaine in the attic, but had helped cover it up.

If Mr. Laws had interviewed Everlean Murph, he would have learned that she could have

7

testified that her daughter never went into the attic and had no access to the attic. She could also have testified that the stuffed animal found inside the box in the attic could not have belonged to her daughter's children. Specifically, Everlean Murph would have testified that she stayed at her daughter's house every weekend and was with her during many weekdays, and that she had never seen Ms. Murph-Jackson go into the attic. She would also have testified that her daughter "did not go into the attic because she is a severe asthmatic and there would be dust in the attic that would aggravate her asthma." Everlean would have testified that "[t]here are no stairs to the attic so you need a ladder to get up there," and that the family did not have a ladder on the property. In addition, she would have testified that her daughter did not allow her children to have stuffed animals because "they collect dust and aggravate her asthma and allergies."

Everlean Murph's testimony would have directly contradicted the government's damning contention that Vicki Murph-Jackson knew about the cocaine in the attic and had helped cover it up. Ms. Murph-Jackson's children could also have testified about the fact that their mother did not go into the attic and did not allow them to have stuffed animals.

According to Ms. Murph-Jackson, she asked Laws to talk to her daughter Jasmine. She explained to Laws that Jasmine could testify that Ms. Murph-Jackson was not at home when Kevin Turner came to the house with a large box and left without it. Laws refused to talk to Jasmine and said he would not call her as a witness. The codefendant's lawyer, Mr. Sanan, ended up calling Jasmine to testify, and Laws did not ask her any questions. Jasmine's testimony did not contain any of the favorable evidence Everlean could have offered. Everlean's testimony would not have duplicated Jasmine's testimony, but would instead have added an additional piece to the exculpatory puzzle.

8

In addition, Laws's performance at trial was constitutionally deficient because he met with Ms. Murph-Jackson only a handful of times during the pendency of the case and did not consult with her adequately, and because he was not prepared for trial.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By: s/Alison Siegler
Alison Siegler
Attorney for Vicki Murph-Jackson

ALISON SIEGLER
Federal Defender Program
55 East Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8350

# CERTIFICATE OF SERVICE

The undersigned, Alison Siegler , an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**PETITIONER'S SUMMARY OF MEMORANDUM OF LAW
IN SUPPORT OF § 2255 PETITION**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on November 1 , 2007, to counsel/parties that are non-ECF filers.

By:    s/Alison Siegler
ALISON SIEGLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8350