UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICKI MURPH-JACKSON | ) | |
| | ) | No. 07 C 6005 |
| v. | ) | |
| | ) | Hon. Charles P. Kocoras |
| UNITED STATES OF AMERICA | ) | |

GOVERNMENT'S RESENTENCING MEMORANDUM

Following the grant of her § 2255 motion with regard to her attorney's performance at sentencing, Vicki Murph-Jackson faces resentencing. As befits her role as the accountant and manager of the Kevin Turner drug operation, the Court should sentence Murph-Jackson within her revised guidelines range of 188 to 235 months.

**Background**

Murph-Jackson was charged by way of indictment in 2002 with a variety of narcotics offenses growing out of her role in the Kevin Turner drug organization that operated for years on the south side of Chicago. R.1. Count One charged nine defendants, including Murph-Jackson, with conspiracy to possess with the intent to distribute and to distribute in excess of five kilograms of cocaine in violation of Title 21, United States Code, Section 846. R. 1 at 1-4. Count Two charged Kevin Turner, Rodney McLee and Murph-Jackson with possession of cocaine and cocaine base with intent to distribute (21 U.S.C. §

841(a)(1)). R. 1 at 5. Count Three charged McLee and Murph-Jackson with possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)). R. 1 at 6. Counts Six through Eleven consisted of telephone counts against various defendants (21 U.S.C. 843(b)). R. 1 at 9-14.

Murph-Jackson went to trial with Rodney McLee and Wanda Turner; the jury convicted them. Murph-Jackson was convicted of Count One, Count Two, and Count Ten, and acquitted of Count Three. R. 180, 182, 184, 187. The jury returned *Apprendi* special verdicts of less than 500 grams of cocaine against Wanda Turner but more than 5 kilos of cocaine against Rodney McLee and Vicki Murph-Jackson. R. 181. Attorney William Laws represented Murph-Jackson in the district court and in the ensuing appeal.

## **The Government's Trial Evidence**

The government's evidence at trial established the existence of a years' long—from 1996 to 2002—cocaine conspiracy that operated on the south side of Chicago. The defendants each took a role in that conspiracy, which was headed by Kevin Turner. The evidence establishing this conspiracy consisted of witness testimony from cooperating defendants, law enforcement officer testimony to the results of surveillances and searches, and wiretap evidence gathered from two court-authorized interceptions of telephones used by Kevin Turner.

The evidence that proved the existence of this conspiracy was overwhelming. Most prominently, there was a Title III wiretap on two of Kevin Turner's phones for two thirty-day periods from December 2001 to February 2002. During the wiretaps, well over 1000 calls were intercepted between Kevin Turner ("Turner") and various individuals, including many pertinent calls with his co-conspirators discussing all aspects of the drug-trafficking operation and other aspects of the conspiracy.

The evidence showed that Turner bought cocaine powder in kilogram and, later, multiple kilogram quantities from Juan Martinez and others. Turner sold the cocaine in wholesale quantities to other co-conspirators, usually as powder cocaine, and used his codefendants for storing and delivering cocaine as well as for brokering cocaine deals. In particular, Rodney McLee and his wife, Murph-Jackson, stored Turner's cocaine for him at their residence in Calumet City, Illinois; Rodney McLee and others acted as runners or delivery persons for Turner's drug operation, dropping off drugs and picking up money at Turner's direction. Rodney McLee and Murph-Jackson stored and protected Turner's cocaine for him. Rodney McLee and others acted as brokers for the Turner drug operation, that is, they brought customers who wanted to purchase cocaine into contact with Turner who had cocaine to sell. In addition, Murph-Jackson and

Rodney McLee, kept track of Turner's drug proceeds, collecting, counting, storing and disbursing Turner's drug money at his direction.

From December 29, 2001 through January 21, 2002, the DEA and local law enforcement officers intercepted conversations concerning the conspiracy on a cellular phone used by Kevin Turner ("Target Phone 1") pursuant to a Court-authorized wiretap. On January 31, 2002, another Court-authorized wiretap began on a second phone used by Turner ("Target Phone 2"); this interception ceased on February February 26, 2002. Conversations concerning the conspiracy were intercepted on both Target Phones 1 and 2.

*The February 21, 2002 Seizures*

On February 21, 2002, several events transpired that were featured in the government's evidence at trial. On the Turner wire that day, conversations were intercepted indicating that Kevin Turner was preparing to make a large payment to Juan Martinez for drugs that Turner had received from Martinez. Turner was intercepted instructing McLee and Murph-Jackson to gather the money together to pay Martinez, and was further intercepted arranging the payment with Martinez. Law enforcement officers working with the DEA were able to watch McLee and Murph-Jackson as they met with Martinez at a liquor store at 87th and South Chicago on the south side. Martinez (in one car) and McLee and Murph Jackson (in another car) were then followed to the vicinity of

4

88th and Yates where McLee was observed to hand a plastic bag to Martinez. Martinez was followed away from the meeting and stopped. The bag contained approximately $47,000 in currency. Following this seizure, Martinez was intercepted telling Turner not to use his phone, and the investigation became overt.

Following that call, that same evening officers went to 402 Hirsch in Calumet City, the residence of Murph-Jackson. After obtaining her consent to search, the officers recovered approximately 40 kilos of powder cocaine, 400 grams of cocaine base, and one loaded 9mm handgun. Other items of evidentiary value were also recovered from Murph-Jackson's bedroom, including notebooks which contained entries corresponding to figures discussed by Turner and Murph-Jackson over the wire intercepts.

*Defendant Testimony*

The government called as witnesses at trial codefendants Kevin Turner, Prince Turner, Jr., and Steve Brown, as well as two defendants from other case, Jones and Everett. The testimony from these witnesses covered all aspects of the conspiracy, from the suppliers down to Turner's customers, and each of them implicated Murph-Jackson in the conspiracy as a highly placed and trusted confidant and coconspirator of Kevin Turner. The government incorporates here

5

by reference the government's version of the offense, attached to the PSR, which contains a summary of the cooperating witness testimony introduced at trial.

*Wire Intercept Evidence*

The most damning evidence against Murph-Jackson, however, consisted of her own conversations that were secretly recorded on government wiretaps. The government offered more than 60 tape recordings from court-authorized wire interceptions into evidence, including recordings on which Murph-Jackson was intercepted discussing drug operations with Kevin Turner. For example, the recordings confirmed that Vicki Murph-Jackson stored cocaine (also confirmed by the search of her house in February 2002) and dispensed it from her house at Kevin Turner's direction. On February 7, 2002, call # 154, Kevin Turner told Vicki that "G-Ball" wanted to see "the M" (a code word for a kilo of cocaine.) Turner told Vicki that G-Ball was going to exchange some drugs for two kilos of cocaine, and that Vicki had to hurry ("but you got to hurry cause he got to um, two of the um the M's and plus fifty out of another one. Right and then he gonna give you, you'll see what he got. He give it to ya back," #154). On February 2, 2002, Call # 23, Vicki also reported to Kevin Turner--who asked "did Al shoot through there yesterday?"--that he did and that he owed Kevin Turner "eight dollars" or $8000. On February 8, 2002, call # 165, Vicki told Turner that

6

she didn't "have any yellow ribbons I just have black ribbons," referring to kilos of cocaine.

Vicki also collected money for Kevin Turner, as evidenced by numerous calls, including # 14 on February 1, 2002 ("TURNER: Did Prince give you that yesterday? VICKI: Yeah, fifteen.") In a series of calls beginning with call # 171 on February 8, 2002, Kevin Turner, Rodney McLee and Vicki all discuss the fact that "G-Ball" had purchased a kilo of cocaine for $21,000, but that initially Vicki counted only $12,000 in payment. When Turner asked why McLee had taken a whole kilo to G-Ball, McLee said, "That's what you told me to take to him." In call #172 later that same day, Turner speaks directly with Vicki and directs her to count the money again--"you got to count it, count it, count it all the way through." In the next call, call # 173, Turner confirms with McLee what McLee had given his wife--"that's what I gave her, I gave her three stacks . . . TURNER: She said you gave her god damnit two stacks dude what I'm trying to say. McLEE: I gave her three, Waldo, god damnit bye bye." In calls #174 and #175, Vicki reports to Turner that the money was there, all $21,000--call # 175, "Yeah, I got twenty-one dollars." And Turner states, call #174, that "dude"--presumably G-Ball--"is going ballistic, he don't even want to fuck with Waldo no more, he going ballistic."

In calls # 123, 124 and 125 on February 6, 2002, Turner, Brown and Vicki were intercepted in conversations evidencing their involvement with Turner's drug business, including drug deliveries that Brown was to make for Turner.

Rodney McLee delivered drugs, picked up money, and acted generally as Kevin Turner's right hand man. In one call, # 55 on February 3, 2002, Kevin Turner was intercepted instructing McLee to pick up all the money--"the paperwork"--including the "paperwork" from Prince Turner, Jr. before meeting with Turner. McLee is also intercepted reporting back to Turner on the count of money that he had collected that day, call # 77. In that call, McLee told Turner that Vicki had counted the money and that it was short--"she just counted this money and this money is not all here. It's ten six and it's twenty-seven fifty. Now I ain't touched shit." In this call, Turner instructed McLee to call Prince, who was suspected as the source of the shortage. McLee also was intercepted discussing the price charged by Turner for the drugs (for example, call #152: "MCLEE: She only wanted to go over there to 28th Street twice, you know what I'm saying?").

## The Original Sentencing

On February 24, 2004, Murph-Jackson was sentenced to 262 months' imprisonment. 2/24/04 Tr. 18. The Court arrived at the sentence as a product

8

of an offense level 38 and criminal history category II; the Court imposed a sentence of the low end of the guidelines range.

Murph-Jackson appealed her conviction, with Laws again representing her. Although unsuccessful on the merits, Murph-Jackson's case was remanded to this Court for a *Paladino* determination: whether the Court would have imposed the same sentence on Murph-Jackson under a regime of advisory guidelines as it did under the mandatory guidelines. *United States v. McLee*, 436 F.3d 751, 766-67 (7th Cir. 2006). The Court replied that it would impose the same sentence under the advisory guidelines, R. 283, and the Seventh Circuit affirmed. *United States v. Murph-Jackson*, 187 Fed. Appx. 653 (7th Cir. 2006).

## **The Government's Position**

On September 2, 2008, the Court granted Murph-Jackson's § 2255 motion attacking her sentence on the ground that she received constitutionally ineffective assistance of counsel. R. 21 at 2. In a later ruling, the Court found that Murph-Jackson was eligible for the safety-valve reduction of Guideline § 5C1.2. R. 25. Murph-Jackson thus faces resentencing at a guideline offense level 36, criminal history category I: 188 to 235 months.

Murph-Jackson's guideline range accurately reflects the seriousness of her criminal conduct: her years' long involvement with the Kevin Turner drug operation and the multiple kilograms of cocaine that the operation distributed

9

to the some of the most vulnerable people in the city. The guideline range reflects drug amounts that are attributable to Murph-Jackson's personal involvement with the conspiracy, and in fact do not reflect any enhancement for what is arguably her increased role in the offense acting as a supervisor of Rodney McLee and a manager of money and cocaine on behalf of Kevin Turner. At the very least, Murph-Jackson was McLee's coequal in the drug conspiracy's ranks. A significant deviation from McLee's sentence (leaving aside his sentence on the § 924(c) count)) would undeservedly reward Murph-Jackson, since there is little basis in the trial record on which to distinguish between the culpability of the two defendants. Her revised guideline range adequately accounts for Murph-Jackson's safety-valve conduct by lowering her offense level by 2; no further decrease in offense level is warranted by her exceptionally late fulfillment of the requirements of the safety-valve provision.

Thus, it is our position that Murph-Jackson should be sentenced within the revised guideline range of 188 to 235 months.

    Respectfully submitted,

    PATRICK J. FITZGERALD
    United States Attorney
    /s/Stuart D. Fullerton
By:  STUART D. FULLERTON
    Assistant United States Attorneys
    219 S. Dearborn St., 5th Floor
    Chicago, Illinois 60604
    (312) 353-5266